York *v.* Haire, et al.

No. 41163 May 25, 1959 112 So. 2d 245

*Paul M. Moore, W. J. Evans,* Calhoun City, for appellant.

*W. W. Brown,* Calhoun City; *Jesse Yancy, Jr.,* Bruce, for appellees.

ARRINGTON, J.

The appellant, Dr. D. C. York, plaintiff below, filed suit in the Circuit Court of Calhoun County against Johnny Haire, Rex Haire and Edd Campbell, appellees, for $612.20, actual value of 336 pine trees wrongfully cut from his land, and, in addition, statutory damages were demanded against Johnny Haire and Rex Haire in the amount of $5,040, at the rate of $15 per tree. The appellees answered, denying liability and affirmatively set up that Johnny Haire was the owner of the land where the trees were cut by adverse possession, and that the trees were cut in good faith.

The record reveals that John Haire, the father of Johnny and Rex Haire, had owned the SW¼ of Section 31, Township 12, Range 1 E, since 1925, and that this land was conveyed to Johnny Haire in 1948. The land in question and owned by the appellant is the W½ of the SE¼, same section, township and range. This land was assessed to Brown Brothers, and on July 6, 1931, was sold to the State for taxes for the year 1930. On February 27, 1939, a forfeited tax land patent was executed to F. O. Brown and through mesne conveyances Dr. York acquired the title and became the record owner.

The evidence reveals that there was a fence and a hedge row along the east, and an old road on the north side, and these monuments were treated by John Haire and his predecessors in title as his east line between the properties. Through all of the subsequent years from the date of his purchase in 1925 to the time of cutting this timber, he and his successor in title, Johnny Haire, exercised full ownership over the now disputed land,

farming, pasturing, cutting firewood from the land, and selling timber off of the same. There was never any challenge of his ownership and possession. In addition, there was a sale of timber in the early 1940's, and again in 1948. Edd Campbell, who cut the timber for the Fair Lumber Company in 1948, testified that the cutting here involved was over the same area where he cut the timber in 1948.

Monuments, consisting of the hedge row and the old road 1900, existing for many years—more than ten years before this cutting—were clearly identified as the line between the properties, the property to the east being the property of Dr. York, and the property to the west being owned by Johnny Haire.

The proof was ample to show that John Haire was in full possession of this disputed area when the patent was issued by the State. Neither the patentee nor his successors in title made any effort to put Haire off the land. In the meantime, Haire and his son, Johnny, who succeeded to the title, continued their possession without interruption until this suit was filed on July 23, 1956, more than sixteen years later.

With like circumstances in the case of Rotenberry, et al. v. Arnold, et ux., 212 Miss. 564, 55 So. 2d 141, where the appellees therein were in full possession of the parcel of land there involved when the patent was issued, and continued thereafter for at least twelve years before the appellants attempted an ouster, the Court said: ''The establishment of appellees' title by adverse possession, under such proof, is too obvious to require the citation of authorities.''

 The appellant assigns a number of errors, among them being that the court erred in granting certain instructions, one of which is as follows: ''The Court instructs the jury for the defendants that an agreed and recognized line is just as good and binding as an established line even by Government monuments or surveys;

and if you believe from all the evidence in this case that the fence and old field has been recognized for ten years or more as the agreed boundary between the properties of this suit, or their predecessors in title, then such fence and old field represents the true boundary, and no survey, no matter how accurate, can disturb such established line, or legally change the same, so far as this suit is concerned.

"The Court further instructs the jury for the defendants that if you believe from a preponderance of the evidence in this case that the old hedge row, old fence and east side of the old field was the agreed and established line in this case and that the defendants did not cut any timber over said line then you must find for the defendants."

While the word "agreed" perhaps should not have been used, undoubtedly, the old hedge row was "recognized" as the line because the Haires occupied the land up to that line for many years—more than ten. Since there was no attempt to ouster during that time, it must rightfully follow that it was "recognized" as such by the abutting owner from his acquiescence therein. If he acquiesced by his silence, this amounted to a tacit agreement thereto. Therefore, we do not think that the word "agreed" was prejudical. In 8 Am. Jur., Boundaries, Section 80, it is said: "It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations— they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line."

We have examined the other assignments argued and find them to be without merit. It follows that the judgment of the court below should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.