BROOM, Justice,
for the Court:
Cemetery rights are the subject of litigation in this cause growing out of “excepting and reserving” language of a land deed. Appellants’ (Sidney Stuart, et al.) bill against appellees (Mrs. Willie C. Smith, et al.) was tried in the Chancery Court of Wilkinson County, which court entered a decree adverse to appellants. We affirm.
In 1933 by warranty deed W. C. Stuart (son of Martha, same person as M. C. Stuart) conveyed 243 acres in Wilkinson County to Julia Morris (appellees’ predecessor in title). Following the land description, the deed reads:
[Excepting and reserving therefrom one quarter of an acre in square form surrounding the present graveyard with necessary rights to and from said graveyard at any and all times for the use of the heirs of M. C. Stuart, deceased.
Subsequently the appellees purchased from Julia Morris (or her successor in title) property completely surrounding the one-quarter of an acre, and remain in possession. In 1974, for valuable consideration, the heirs (five of the appellants) of W. C. Stuart conveyed by separate deeds unto the appel-lee Mrs. Willie C. Smith all their right, title and interest to the one-fourth acre excepted and reserved by W. C. Stuart in his 1933 deed to Julia Morris. These deeds each state that the grantor does “hereby convey and warrant unto Willie C. Smith, all my right, title and interest” in the one-quarter acre. Then in 1975 appellants (descendants of M. C. Stuart) filed their bill to (1) have the cemetery perimeter established, (2) require appellees to remove all trailers, structures and personal property from the one-quarter acre parcel, and (3) have appellees enjoined from interfering with access of M. C. Stuart’s descendants to the cemetery and their right to be buried there.
The lower court established the perimeter of the cemetery as depicted by the map drawn by R. L. Hammack. His map (introduced into evidence) indicates that the actual land upon which graves were made consists of approximately one-half of the quarter acre. In construing the 1933 deed the chancellor held it to mean that W. C. Stuart reserved unto himself in fee simple one-quarter of an acre in square form “capable of being conveyed” by his heirs who in 1974 did convey it to the appellees. Additionally, the chancellor held that the appellants have only “the right or license to be buried in the graveyard as it existed ... in 1933” with ingress and egress rights. His decree did not by metes and bounds precisely describe the one-quarter acre in square form decreed to be owned by appellees, or the fifteen foot easement decreed to appellants for access to the existing graveyard. However, there was attached to the decree, and by reference made a part of it, a map which shows the graveyard’s area colored yellow on the map. Appellants contend that it was W. C. Stuart’s effect and intention (as *129 expressed by his language in the 1933 deed to Julia Morris) to create a one-quarter acre cemetery in square form rather than just the smaller parcel upon which people were actually buried.
Testimony introduced in this cause is summarized here. Appellees own all lands adjacent to the cemetery which is one of antiquity. No person has been interred there since about 1910. Appellants’ father and grandfather were buried elsewhere, and the same is true of W. C. Stuart, who employed the controversial excepting and reserving language in his 1933 deed to Julia Morris. Two experts, an archeologist and civil engineer, have through resistivity tests and a topographic survey established the perimeter of the cemetery as actually used for burial sites. The court found as a fact that prior to W. C. Stuart’s execution of the 1933 deed, the cemetery existed upon the land or area depicted in yellow on the map or plat of archaeologist McGahey.
The description in the controversial clause is fairly definitive of the entire parcel, but does not precisely define the perimeter of the burial ground. McLendon v. Ravesies, 178 Miss. 428, 173 So. 303 (1937), held that if any reasonable construction can be given to a land description, it will not be held void for uncertainty. No evidence in the record establishes with precise certainty the publicly recognized perimeter of the cemetery, but witnesses Florida Ford and Jim Williams state that the cemetery is located where it has always been since they have known of the Stuart family cemetery. Mrs. Smith testified that shortly after she purchased the property (approximately forty years ago), Mr. Bernie Stuart, father of the complainant Sidney Stuart, pointed out the limits of the cemetery to her and told her she could use the remainder of the land for a garden. However, McGahey by his resistivity tests located the cemetery. The evidence shows that no burials have been made there since the date of the conveyance. It follows that the cemetery would have been the same size and in the same location in 1933 as at the present. Thus the chancellor acted reasonably in fixing the “perimeter and boundaries of the cemetery . as being that shown in yellow on the map and plat” of archaeologist McGa-hey, and in fixing appellants’ “easement and right-of-way” to the cemetery as a fifteen foot strip “by the shortest and most direct route.” There is no proof or argument that this location of the “easement and right-of-way” is unreasonable or unusable or unduly restrictive as to appellants.
Appellees cogently argue that the actual burial ground should (as decreed below) be limited to the perimeter of the area upon which graves are presently located as determined by archaeologist McGahey’s resistivity tests. Appellants contend that the language “for the use of the heirs of M. C. Stuart, deceased,” gives them use of the entire one-quarter acre for burial purposes. No case precisely in point is cited from this jurisdiction and we have not found any. Morgan v. Collins School House, 160 Miss. 321, 133 So. 675 (1931), dealt with a deed in which the intended grantees were not legal entities in esse. There, even though the deed, void for lack of any grantee, failed to effectively establish a private cemetery, we held:
Under the facts shown in the testimony the permitting of people to bury their dead in the said lands, and its use as a cemetery or graveyard by persons with permission and a consent of the owners creates a situation which equity will protect to the extent of its powers to do so under the facts (Citations omitted) . The custom of ages has been for people to bury their relatives together or in the same cemetery as far as reasonably possible and giving a privilege to bury should be understood as carrying this right. (160 Miss. at 329, 133 So. at 677).
Mississippi Code Ann. § 41-43-3 (1972) is authority that this state now recognizes private or family cemetery or. burying ground. However, the statute (and none other cited in the briefs) controls here where the question involved is one of interpreting an inartfully drawn clause in the 1933 deed. Our affirmance of the lower court’s decree in no way operates to deny *130 appellants in any manner of their reasonable use of and access to the established cemetery which the chancellor found to preexist the deed in question. His refusal to order enlargement was not inequitable upon the facts and circumstances of this case. Appellees have not cross appealed from his rejection of their theory that the cemetery had been abandoned.
Appellants question the logic of W. C. Stuart conveying 243 acres and saving unto himself one-quarter of an acre in fee simple and placing rights of ingress and egress to the cemetery in M. C. Stuart’s heirs. They ask why would he hold fee simple title in himself to the small area surrounding the Stuart cemetery. In some of the cases cited by appellants there was raised the question of why would a grantor reserve in himself a small island of land in a large tract, but the facts of those cases are distinguishable from the instant case. W. C. Stuart’s intent as construed by the chancellor is not unreasonable. Obviously he desired to maintain control of the area surrounding the burial ground and it does not appear from the record that his purpose was illegal or contrary to public policy. Appellants state that W. C. Stuart could have made no reasonable use of the small area surrounding the cemetery. Although use of the area may not have been financially rewarding to him or his successors (appellees), he certainly had a right to retain title to it as a buffer zone around the burial ground, or for a burial place for his children who (because W. C. Stuart was yet alive) in 1933 were not heirs of M. C. Stuart, or for any other purpose that may have existed in his mind not shown to be illegal or against public policy.
As construed by the lower court, W. C. Stuart’s language operated to retain in himself fee simple title to the square shaped one-quarter acre burdened with an easement in favor of appellants as to the actual burial ground. Mainly from evidence introduced by appellants, the court established the perimeter and boundaries of the cemetery in a logical manner. Our judgment is that the chancellor’s interpretation of the controversial language in W. C. Stuart’s 1933 deed was correct. His findings of fact and decree were based upon substantial evidence and sound legal principles.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.