DIAZ, J.,
for the Court:
¶ 1. H.D. and Wanda Scruggs, the appellants, contest the chancellor’s decision to allow Carolyn Shelby, the Kyles, and the Petteys, the appellees, to maintain a prescriptive easement on the appellants’ property. Feeling aggrieved by this decision, the appellants argue the following issues on appeal: 1) the chancellor erred in placing the burden of proof on the appellants, 2) the chancellor erred in finding that the appellees proved by clear and convincing evidence that their use of the appellants’ property was hostile and under a claim of right, 3) the chancellor erred in finding the appellees proved by clear and convincing evidence that their use of the appellants’ property was exclusive, and 4) the chancellor erred in finding that appellees’ alleged prescriptive easement had not been abandoned. Since the first issue is dispositive, we do not address the other issues or the cross appeal. Finding this first assign *348 ment of error meritorious, we reverse and remand for proceedings consistent with this opinion
FACTS
¶ 2. This case arose from a dispute over an alleged prescriptive easement maintained on approximately two acres of the appellants’ property in Lee County. In 1953, John T. Houston acquired sole ownership of the West Half of the Southeast Quarter of Section 2, Township 11 South, Range 5 East in Lee County, Mississippi. At that time, T.D. Pettey owned the South Half of the East Half of the Southeast Quarter. When T.D. died in 1954, title to this tract passed to his wife and children. In the late 1960’s, George Monroe Pettey and Huel L. Kyle, the husband of T.D. Pettey’s daughter, Viva, constructed two earthen dams along the natural drain which crosses the Southeast Quarter and flows into Chiwappa Creek forming two lakes. Eventually, the upper lake backed up onto the property owned by Houston and flowed under an existing fence line which separated the East and West Halves of the Southeast Quarter.
¶ 3. In 1976, George Monroe Pettey died. In August 1978 a formal division was made of the South Half of the East Half of the Southeast Quarter between his children, George Thomas Pettey, Gloria Pettey, and George Monroe’s sister and brother-in-law, Viva and Huel L. Kyle.
¶ 4. In March of 1981, H.D. and Wanda Scruggs purchased the West Half of the Southeast Quarter from Houston. At the time of purchase, the water from the upper lake encroached on the property; however, the fence line was still in place and clearly marked the eastern boundary of the Scruggs’ property. The Scruggses gave George Thomas Pettey permission to continue to maintain the water on their property. However, in March of 1985 the Scruggses approached George Thomas Pettey and requested that the water from the upper lake be drained from their property. George Thomas Pettey agreed and cooperated with the Scruggses in cutting the upper dam thereby draining the backwaters of the upper lake from the Scruggses’ property.
¶ 5. George Thomas Pettey died in 1988, and his interest in the South Half of the East Half passed to his wife Wanda Pettey and their sons Brian Thomas Pettey and Jonathan Michael Pettey. In April of 1990, Viva Kyle deeded her portion of the South Half of the East Half of the Southeast Quarter to her daughter Carolyn Shelby and to her son and daughter-in-law Jerry Donnell Kyle and Brenda Joyce Kyle. A portion of Jerry and Brenda Kyle’s property was subsequently transferred to their son Carey Donnell Kyle.
¶ 6. The lower levee soon fell into general disrepair as muskrats tunneled through and it was worn by the elements. Therefore, in August of 1990 Carolyn Shelby hired Homan McFarling to repair the lower dam; however, this attempt was thwarted by a flood in October of 1990. In June of 1991, McFarling again attempted to repair the dam but had little success. In June of 1992, Carolyn Shelby hired Robert Grant who rebuilt and repaired the lower dam, and thereafter, the lake began to fill with water. By the end of 1992, the water from the lower lake began to back up onto the Scruggses’ property. Although the Scruggses complained to Carolyn Shelby about the water, no action was taken to drain the water from the Scruggses’ property.
¶ 7. The original suit filed in April of 1993 by H.D. and Wanda Scruggs sought to quiet and confirm title to certain real property in Lee County and to obtain in-junctive relief and damages for a continuing trespass by Carolyn Shelby. :The amended complaint asserted that the defendants jointly and individually owned interests in the adjoining East Half of the Southeast Quarter. The defendants answered the amended complaint and took the position that they held a prescriptive easement which entitled them to let the water of their lake encroach upon the *349 Scruggses’ property. After trial conducted on March 80 and May 25, 1996, the parties submitted briefs, and the court entered an interim judgment on February 2, 1996 and a final judgment on April 1,1997. This appeal was then timely filed.
DISCUSSION
I. THE CHANCELLOR ERRED IN PLACING THE BURDEN OF PROOF AS TO THE ALLEGED PRESCRIPTIVE EASEMENT UPON THE SCRUGGS
¶ 8. We review a trial judge’s factual findings under the manifest error or clearly erroneous standard. Murphy v. Murphy, 681 So.2d 812, 815 (Miss.1994). Therefore, we will not interfere with the chancellor’s findings unless he was “manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).
¶ 9. “The standard and burden of proof to establish a prescriptive easement is the same as a claim of adverse possession.” Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152 (Miss.1992); Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 117 (Miss.1987). Therefore, it follows that the party trying to establish the existence of a prescriptive easement must prove by clear and convincing evidence that their use or the occupation of the property was: 1) under claim of ownership, 2) actual or hostile, 3) open, notorious, and visible, 4) continuous and uninterrupted for a period of ten years, 5) exclusive, and 6) peaceful. Id. at 1152-53.
¶ 10. In his final judgment, the chancellor mistakenly placed the burden of proof on the Scruggs “to offer sufficient proof to require the defendants to cut the dams on their real property so as to drain the lakes,” when as a matter of law, the appel-lees had to establish by clear and convincing evidence the existence of their alleged prescriptive rights. By placing the burden of proof of the issue of the prescriptive easement on the Scruggses, the chancellor applied an erroneous legal standard which brings into question his conclusions on the remaining issues. Brooks v. Brooks, 652 So.2d 1113, 1117 (Miss.1995) (“Where a lower court misperceives the correct legal standard to be applied, the error becomes one of law, and we do not give deference to the findings of the trial court.”). Here, we do not reach the merits of the remaining issues including whether sufficient evidence existed to support the findings of the chancellor since the application of an erroneous legal standard by the chancellor is dispositive in this case. At trial, contested evidence regarding these issues was introduced. However, we cannot apply the correct burden of proof and say whether an easement by prescription arose. Therefore, since the chancellor applied an erroneous legal standard, we find it necessary to reverse and remand this case for proceedings consistent with this opinion.
¶ 11. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR A NEW TRIAL WITH FINDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS DIRECT APPEAL ARE TAXED TO THE APPELLEES.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING and LEE, JJ., NOT PARTICIPATING.