806 So.2d 328 (2002)
Leo M. HOWARD, Brenda S. Howard, Betty D. Sisson, John W. Dempsey and Lottie C. Dempsey, Appellants
v.
Max O. FULCHER and Barbara R. Fulcher, Appellees.
No. 2000-CA-01087-COA.
Court of Appeals of Mississippi.
January 29, 2002.
*329 Helen J. McDade, DeKalb, for Appellants.
J. Niles McNeel, Louisville, for Appellees.
Before KING, P.J., LEE, and BRANTLEY, JJ.
KING, P.J., for the Court.
¶ 1. The Fulchers filed a complaint against adjoining landowners to quiet title and remove cloud to real property situated in Choctaw County. A counterclaim to quiet title and remove cloud from title was filed by the adjoining landowners, Leo M. Howard, Brenda S. Howard, Betty D. Sisson, John W. Dempsey, and Lottie C. Dempsey (hereinafter referred to collectively as "the Howards"). The chancellor ruled in favor of the Fulchers and determined that they had a prescriptive easement regarding the use of a roadway. Aggrieved by this decision, the Howards have appealed and stated the issue as follows:
Whether the chancellor is manifestly wrong or applied an improper legal standard when he chose a survey which did not find any established government corners and did not use the original bearings and did not compensate for excesses in the distances and which did not coincide with the established landowner corners and was so wrong in failing to find an old land line fence, where one was destroyed by the plaintiffs and gave the plaintiffs a prescriptive easement *330 where all use of a road was by agreement and permission of the true owner of the land.

FACTS
¶ 2. This case arose from a dispute involving ownership of land situated in Choctaw County and a dispute over the location of a section line situated on property in Choctaw County. In 1948, Victor and Okley Romedy acquired by warranty deed ownership of the:
North half of the Northwest Quarter of Section 25, Township 15 North Range 10 East, containing eighty acres, more or less in Choctaw County.
In 1976, the Romedys conveyed to their daughter Barbara and her husband Max Fulcher, a portion of this property described as:
N½ of N½ of NW¼ of Section 25, Township 15 North, Range 10 East, containing 40 acres, more or less.
The remaining 40 acre Romedy tract was conveyed to Barbara's sister.
¶ 3. In 1967, the Sissons acquired a tract of property adjacent to the Romedys, but situated in Section 24, described as:
½ acre Southeast corner SE¼ of NE¼ of Section 23; S½ of SW¼, less 2 acres North side and less 1 acre South side SE¼ of SW¼ and N½ of SW¼ less 25 acres Northeast corner and ½ acre Southwest corner SW¼ of NW¼ of Section 24; all in Township 15 North, Range 10 East, containing 133 acres, more or less.
In 1976, the Sissons, conveyed to Leo and Brenda Howard, a portion of their tract described as:
Begin at the SE Corner of the SE¼ of the SW¼ of Section 24, Township 15 North, Range 10 East and run Westerly along an existing fence 559.0 feet; thence North 10.6 feet to the point of beginning of the plot herein described. From the above P.O.B. run N 62° 30' W 290.4 feet to a point on the South and East side of the existing Public Gravel Road as it now lies; thence run N 27° 30' E along the South and East side of said road 150.0 feet; thence S 62° 30' E 290.4 feet; thence S 27° 30' W parallel to said road 150.0 feet to the P.O.B., describing 1.0 acre in the SE¼ of the SW ¼ of Section 24, Township 15 North, Range 10 East, Choctaw County, Mississippi.
¶ 4. On September 9, 1998, the Fulchers filed a complaint to quiet and confirm title and remove cloud from title against the Howards. The issue placed before the court was where the location of the section line lay. The Fulchers have record title to the north one-half (N½) of the north one-half (N½) of the northwest quarter (NW¼) of section 25, and the Howards own land along the south line of the southwest quarter (SW¼) of section 24. At trial, on May 1 and 4, 2000, both parties introduced evidence to show deraignment of title.
¶ 5. Both parties called surveyors who testified to the surveys performed by them. Don Gregory, the Fulchers' surveyor, stated that based on his surveying method, there was a slight deviation on the bearings used because the original surveyors used a compass while he used solar observations. Mr. Gregory testified that he started his survey near the southwest corner of section 24, which would be the northwest corner of section 25. He testified to having located a pine knot at the northwest corner of the southwest quarter as a beginning point, and based on his conversation with other landowners in the area, believed this pine knot was the true corner of the northwest corner.
¶ 6. The Howards' surveyor, Chris Barker, found an iron rod at a fence corner by using the United States Geological Survey (USGS) Quad map to find a starting point *331 for his survey of the property. Based on Barker's findings, he disagreed with the accuracy of the starting point used by Gregory. He determined that the iron rod located at the fence corner was the northwest corner of section 25, which would also be the southwest corner of section 24.
¶ 7. At the conclusion of all testimony, the chancellor, by prior agreement of the parties, examined the property.
¶ 8. The chancellor found that the land in dispute belonged to the Fulchers, and the location of the section line between sections 24 and 25 was a fence or fence line that ran the distance from Spay Road east to the northeast quarter of section 25. The court determined that the Fulchers were the owners of all of the land south of the fence or old fence line east of Spay Road, and that the Howards did not have a prescriptive easement that existed east of Spay Road. The court further determined that since the Fulchers had used the Lee Knighton Road as an access road to the property for over fifty years, they acquired an easement by prescription which entitled them to use the Lee Knighton Road to access their property. The court granted the Howards the right to place a gate across the Lee Knighton Road conditioned upon the preservation of the Fulchers' prescriptive easement. Aggrieved, the Howards filed this appeal.
¶ 9. While the Howards have presented their claims as one issue, we have divided the issue into three components.

ISSUE AND ANALYSIS

I.

Whether the chancellor was manifestly wrong or applied an improper legal standard when he chose a survey which did not find any established government corners and did not use the original bearings and did not compensate for excesses in the distances and which did not coincide with the established landowner corners.
¶ 10. The Howards contend that the chancellor erred manifestly when he determined the location of the section line based on Mr. Gregory's survey. The Howards argue that the Gregory survey should not have been accepted because it used the original distances but allowed the bearings to vary a little.
¶ 11. It is well settled that chancellors are vested with broad discretion, and this Court will not disturb a chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175(¶ 7) (Miss.Ct. App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)).
¶ 12. In his opinion, the chancellor concluded that:
[S]ince Mr. Gregory used a corner that one of the Defendants admitted was accurate and since he used the distances called for by the government surveyor and since he matched up with some existing pens, that his survey is more accurate than Mr. Barker's. Mr. Barker did not have anyone confirm the accuracy of his corners, and he simply made a judgment call as to how to handle excess distances that he found between corners that he used.
Though the Court finds Mr. Gregory's survey to be more accurate, there is evidence on the ground and testimony that indicates that the recognized line may not be in the location identified as the line by Mr. Gregory's survey.
¶ 13. Having reviewed the evidence in the record, we cannot conclude that the chancellor erred manifestly.

*332 II.

Whether the chancellor erred in failing to find an old land line fence where one was destroyed by the Fulchers.
¶ 14. The Howards contend that there was an old line fence south of Spay Road which was recognized as the property line between the parties. When the chancellor visited the site, he did not find this fence. However, the chancellor did find some old wire south of the present fence, which was on the ground with no evidence that it had been attached to anything except that at a point it had been stapled to a pine stump. It was the chancellor's opinion this was not the location of an old fence.
¶ 15. The chancellor, by his presence in the courtroom, is best equipped to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses. Carter v. Carter, 735 So.2d 1109(¶ 19) (Miss.Ct.App. 1999). It is necessarily the case that, when conflicting testimony on the same issue is presented, the chancellor sitting as trier of fact must determine which version he finds more credible. Id.
¶ 16. The court concluded that the Gregory survey and the testimony of Mr. Emmit Whitmire, who stated that the south edge of the road was accepted as the line between the parties by the prior owners as far back as seventy years ago, were persuasive. Here, the chancellor relied on Simmons v. Cleveland, 749 So.2d 192(¶ 19) (Miss.Ct.App.1999), which held that:
[A]djoining landowners who occupy their respective properties up to a certain line if continued for a sufficient length of time are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one. York v. Haire, 236 Miss. 711, 112 So.2d 245, 246 (1959).
The chancellor further relied on Hulbert v. Fayard, 230 Miss. 1, 92 So.2d 247, 251 (1957), which held that acquiescence in a wrong boundary line will not establish it as a true line, but such acquiescence for a long period of time is evidence that such line is the true line.
¶ 17. Having relied on the above case law, the Gregory survey, the existence of the very old fence along the south side of the road, and the testimony of Mr. Whitmire stating that the south edge of the road was accepted as the line between the parties by the prior owners as far back as seventy years ago, the court found compelling the evidence regarding the location of the land line presented by the Fulchers. Upon review of this evidence, we find no abuse of discretion in the chancellor's decision.

III.

Whether the chancellor erred in giving the Fulchers a prescriptive easement where all use of a road was by agreement and permission of the true owner of the land.
¶ 18. The Howards argue that the Fulchers should not have been given a prescriptive easement. They contend that the Fulchers were allowed to use the Lee Knighton Road by permission to reach their far western corn field. The evidence presented failed to show a manifest error in the chancellor's decision.
¶ 19. Here, the chancellor relied on McCain v. Turnage, 238 Miss. 44, 117 So.2d 454, 455 (1960), which held that one can obtain a prescriptive easement over roadway by long use. To establish an easement by prescription, the claimant must prove by clear and convincing evidence that the use is: (1) under claim of *333 ownership, (2) actual or hostile, (3) open, notorious and visible, (4) continuous and uninterrupted for a period of ten years, (5) exclusive, and (6) peaceful. Scruggs v. Shelby, 733 So.2d 347 (¶ 9) (Miss.Ct.App. 1999). In applying the prescriptive easement requirements, the chancellor determined that by use of this road to access their property for over fifty years, the Fulchers and their predecessors had acquired an easement by prescription which entitled them to use the Lee Knighton Road to access their property.
¶ 20. Having determined that the Fulchers met the requirements to establish a prescriptive easement, we affirm the chancellor's decision.
¶ 21. THE JUDGMENT OF THE CHOCTAW COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and BRANTLEY, JJ., concur.
CHANDLER, J., not participating.